Good morning, Your Honors. May it please the Court, Joshua Buck, on behalf of the appellants, I'd like to reserve three minutes of my time for rebuttal, if that is okay. Just be mindful of your time, Mr. Buck. Yes, Your Honor. This is the second appeal in this particular action resulting from the District Court granting summary judgment on behalf of Appellee Customer Connexx. In the first appeal, this Court determined that the District Court misapplied the facts to the preliminary and post-preliminary standard on an integrity staffing bebusk. In doing so, in its opinion remanding and reversing the prior District Court's order, it instructed the District Court to look at whether or not the time that was submitted in the summary judgment papers could be deemed to be de minimis and thus excludable for compensation under the FLSA, and whether the employer here had knowledge of the unpaid work. The District Court also instructed, or excuse me, this Court also instructed the District Court to look to see whether or not there has been a change in the de minimis standard in lieu of Sandifer beus steel. The District Court on remand, without further briefing on the matter, decided that Sandifer had no impact on the de minimis standard in the FLSA, concluded that under this Court's existing standard for determining de minimis that was set forth in 1984 in Lindau, that the appellant's time that they had asserted was de minimis and that they failed on every single factor. The District Court also found against the appellants and said that the employer did not have any knowledge of the unpaid work at issue in this case. Mr. Buckley, if I may ask you, are you counsel for your client at the trial court level? I am, along with my associate, Ms. Jones, yes. Okay, so how did this unfold after the mandate came down? Did the District Court have a status conference, or was it just silent until the order that's on appeal came out, or something else? If I can recall, Your Honor, I believe that the District Court stated that it could resolve the That's my best recollection at the moment. Okay, thank you. You're welcome. I submit that the District Court erred in all three respects. First, I submit that the District Court erred where they currently rejected that the United States Supreme Court decision in Sandifer at least impacted the continued viability of the de minimis doctrine in FLSA cases. Under impacts that are not, we have firm precedent that there is such a doctrine, and we lack authority as a three-judge panel to overturn it absent an irreconcilable conflict. So can you tell us why there's an irreconcilable conflict? I think that, Your Honor, first, that the U.S. Supreme Court's decision in Sandifer at least raises the specter that the de minimis doctrine does not have any standard I really can't deal with specters at this point. I mean, you can file a non-bank petition, but as far as this three-judge panel is concerned, specters don't matter. What matters is whether there's an irreconcilable conflict. Well, Your Honor, I'm not sure that there's an irreconcilable conflict within the circuit court cases, but I do think that even if this Court does not abandon the de minimis doctrine in FLSA cases, Sandifer and the current stage of the digital age nonetheless do impact this Court's continued recognition of the Lindau factors, if it so desires. And that's one of the things that we argued in our briefing, is that the Lindau factors that are currently in place, that are currently recognized in this circuit, in many circuits indeed, and continue to be applied in cases such as this particular case, do not have the same applicability as they did when they were first announced in 1984. And the reason being is one of the critical factors in Lindau is the administrative difficulty of recording time, recording work time. I would submit to you in today's digital age, that factor has become absolute, and that should not impact and should not be part of any kind of de minimis What you're really saying is that there are different administrative considerations because it's easier to do, so you can tell us about why that's the case, but I don't think it washes, I mean it depends on the particular situation, what matters. I mean, in terms, so it would be helpful to me at least if you actually went through the liberty factor, the Lindau factors. Yes, Your Honor. So under Lindau, and as I stated it was recognized in many cases that Your Honors have likely addressed, is the first factor is whether or not it's administratively difficult to capture the unpaid work that is an issue here. That's really the last factor pretty much, but go ahead. I've seen courts jumble the factors all throughout. Only because if you don't get there, there's not actual, the time is not, is de minimis no matter what. So, but anyway, go ahead. Second factor, or one of the other factors. So tell me why it's administratively capturable. Here it's clearly administratively reasonable to do so because there's an employer, such as this employer, a call center, can place a time clock to be able to capture the time that is issued here, which is the computer boot up time. Indeed, in their very own handbook, they state that one of the ways in which they do capture time is through an employee time clock. However, it appears from the testimony that they did not employ that particular method. It is not administratively difficult in today's day and age to be able to capture the amount of time that an employee engages with the computer. Here we're dealing with work time that is spent engaging with the computer, turning the computer on, booting the program, booting up the timekeeping system in order to log in. As the record demonstrates, this particular employer utilized fairly antiquated technology that was routinely disabled, slow, which from the testimony that was presented to the court, employees spent upwards to 11 to 19 minutes a day engaging in the computer. I don't know where you're getting that number from. I don't know where they're getting their numbers from either. The district court got the numbers. The numbers that are being thrown around seem fairly random. From what I could tell, there were five of the 13. There were 13 plaintiffs. Is that  Seventeen, Your Honor. No, but I thought a couple of them washed out. There originally were 20 and three of those have washed out. Well, of the ones who gave numbers anyway, about five of them said that sometimes it was more than 10 minutes and the rest of them said not. Is 10 minutes the benchmark? What do you think the benchmark is? I don't think there can be a benchmark, Your Honor, and this is one of the issues that I think is brought about with this case. I believe at its heart this case can be decided by, Your Honors, in our opinion, reversed and remanded, simply in an order of reversal, non-published, and just use the existing factors. But I think that this case presents an opportunity for this panel to be able to clarify, at the very least, that when you have daily work that is not compensated, every single work day, that that goes into the regularity of the work factor that we mentioned in Linda. Any kind of time check is going to take some time. If you use a time clock, it's going to take 30 seconds or a minute or something, right? And presumably you're going to have to go somewhere, click the time clock, and go to your computer. So that's going to take some time. Maybe a minute, maybe less than a minute, but it's going to take some time. Is that right? Well... However you do it, it's going to take some time. It would, Your Honor, but it's recognized in this case and in numerous cases what we We're not asserting that it does. But what we hear is it's not just that it's indicated it was resolved in the first appeal, which is the computer here is not simply a computer to capture time. The computer here is the lifeline of a call center agent's productive work. I guess to Judge Berzon's question, you cite in the papers that it would take an average of 4.75 to 7.75 minutes of log off and down the computer. I guess how were those numbers gotten to? I just wanted to make sure I understood that. Yes, certainly, Your Honor. Those are purely from the deposition testimony, okay? Those are purely from when you read the deposition testimony that was submitted to the district court in which Your Honors have in the appendix of record, is that the appellants testified that it would take 5 to 7 to 10 to 15 to 20 minutes to engage with the computer without compensation. Log in, we're talking now. Log in... So what did... But some of them... Is this... Did you... The number that you came up with, did you average all the people, what the people said, and did you use their largest... Because some of them said it took this much time to that much time. How did you come up with that number? You never tell us. Well, again, deposition testimony, the appellants themselves testified... I understand that, but they said all different things, so how did you come up with the number? That number. We averaged the number that was... Average of what? Average if one person said it takes me 5 minutes to 15 minutes, what number did you use to average it? The average between those numbers. So you used the average number that each person gave and then you averaged those. Correct. And we did not have an expert at this point in time because... And if we reproduced that, we'd get your number. Yes, Your Honor. I mean, that's exactly how that number was come up with. You never explain that, by the way. You just keep saying this number. Well, one of the difficulties that we have in this particular case is that we have... It was submitted by... From a defendant employer's summary judgment. We have testimony, we have evidence that was submitted to the district court. Obviously, if this case proceeds to trial, we will have... It's a relatively smaller case, but we will have each individual appellant likely come in to testify for a jury to determine what they believe to be the actual amount of minutes that are in dispute. One of the issues that we raised also in our brief is the difficulty of having a district court apparently resolve the issues of how much time is at issue here on a summary judgment rather than allowing this court... Rather than allowing it to go to a jury to make that determination. But I will focus again on going back to the three factors that Justice Berzon asked about. You can do that, but you have three minutes left. Do you want to reserve? I'm going to go ahead and address these factors real fast, Your Honor, because I think it makes sense to do so. The one issue is the regularity of the additional work. I mentioned on that. The district court looked at the regularity... The district court's view, which I'm sure is what the defendants are going to tell us, is that it may have been regular that they did work, but it wasn't regular that they did more than did minimus work. The amount of time they spent on it was not regular. Well, that may be one of... But that's not necessarily the standard. The standard... And we can look at numerous cases. This is not a Corbin case where we have one minute of uncompensated time in one instance. That's... I don't think in dispute that the court decided that that was de minimis. But when you have work that has been testified to in the papers and in the deposition testimony, five minutes a day, each and every day, then falls in the appellant's favor with regard to the regularity of the work because it's conducted every single day. And even if you go back and look at Lindau, Lindau recognized that there was a certain problem with the idea that an employee could come and make a claim under the FLSA for $100 that they're owed in one particular work week. That would not be de minimis. But then Lindau also recognizes that what if the same employee sought one minute or $1 for one week over the course of 50 weeks or over the course of 100 weeks? That person who sought the $1 per week should not be thrown out of court, whereas the other employee who sought one chunk of $50 that particular week. I think that Lindau here is instructive and assists us in being able to say that when work is performed on a daily basis, whether it's a small increment of time, it is not de minimis. I submit to you that all of the factors, frankly, under Lindau fall in favor of the appellants and I'll reserve my last minute of time for rebuttal. Very well. Thank you. Thank you. May it please the Court, my name is Rob Ginalat. I'm here on behalf of Appalese, Customer Connects, and Gen 1. We, of course, believe the District Court reached the correct conclusion in this case. I would like to briefly address the Corbin decision. I think it's important and elaborate on it a little bit. Their call center employees allege that they arrived 15 minutes early to, one, log in, and, two, load programs after clocking in. The Ninth Circuit's decision did not detail the log-in process, but if you look at the District Court's decision, it includes the facts. The employees had to unlock or wake up their computer, depending on what had happened at the end of the day. They pressed Control, Alt, or Delete. They had to enter log-in information, and then they got in the timekeeping program. And the District Court found that that took one to two minutes a day and that the log-out process took 30 seconds a day. Well, but here I think they're saying, based upon the declarations, that they had somewhere between 4.75 and 7.75 minutes. Then are you saying that that's de minimis? Well, this court has held that daily periods of approximately 10 minutes are de minimis, although there's no rigid rule, of course. What you have in our case— Where do we hold that? Sorry? What case holds that? That every day, if every day you take, you know, nine and a half minutes, that's de minimis? It was originally stated in Lindau, but it's been repeated also. Where in Lindau is it? It's in the summary of the law on the amount of time at issue. It's very near the top of the legal analysis. But Lindau was very concerned with the aggregate time, and he said that you have to look at the aggregate. Right. And Lindau included—Lindau, the court found that the time was de minimis, even though it was seven to eight minutes. And, you know, so clearly here the testimony is a range of time, anywhere from seconds to minutes. It's very difficult to estimate based on the average, but I do want to make very clear this assertion that it took 11 to 20 minutes in the brief. That is not a fact in this case. Well, it's a fact in this case that at least five of the people who testified today testified that to a range that was more—that included more than 10 minutes. Well, let me give you an example. Your numbers don't make sense either because, in fact, there was—I mean, there is testimony from a chunk of these people that it did take often at least more than 10 minutes. That's right in part. So, for example, Andrew Gonzalez, one of the name plaintiffs, he testified that it sometimes took 10 to 15 minutes to clock in. But if you look at the full testimony, including the citations in our brief, they've omitted some very important facts, which is that the 10 to 15 minutes is when there were delays. He also testified that it only took one to two minutes when there were not delays. Well, the delays seemed to have to do with the fact that there were a lot of old computers and some of them didn't work and so that it did, you know, fairly frequently take longer. Yes. The delays were irregular. They were not every day. And the district court found that they were already paid for. And that's undisputed. The employees— Well, it isn't undisputed. Where is it? How is it undisputed? So, if you look at our statement of—sorry. If you look at plaintiff's statement, plaintiff's response to our statement of material facts that was briefed at the district court, they admitted that the employees reported when they had computer delays and that it was paid for or they didn't know if it was paid for or not. So, the delays were irregular, but it already paid for. And I don't think that— Well, if they didn't know, then it isn't proof that it was paid for. But also, does the employee have to ask to get paid? I mean, the statute says suffer or permit to work. And ordinarily, the employer has to pay, not wait till somebody asks them to pay. Employees do not have to ask to get paid. The district court never said that. That is a misconstruction from plaintiff's appellate brief. What the district court said was, you know, there was a process for these unusual circumstances for employees to report it, and they used it and they did get paid. Just returning a second to Corbin, the district court in Corbin found that the one to two minutes spent every day logging in, getting on to the timekeeping program, and then logging off was de minimis. And this court affirmed, you know, in a binding decision. And then again in Ruddy v. Lojack, this court found that time spent logging on to a handheld computer was de minimis. I want to get you back to the Lindau factors. Sure. The practical administrative difficulty of recording the additional time, why wouldn't using a wall clock near the computer banks be a quick fix and an easy fix to the problems as the plaintiffs raised in their suit? Sure. First, plaintiffs did, you know, raised and argued the time clock issue for the first time on appeal. They never argued it below, so it's waived. Number two, the FLSA regulations specifically state, quote, employers are not required to use time clocks. Three, there's practical problems with time clocks. Unless you put the time clock right next to everyone's computer, you know, you're paying for people to walk in from the entrance, and there's testimony that people would go to the break room, that they'd get coffee, they'd socialize in the expert report and, you know, in their deposition testimony. So you're requiring the employers to pay for some non-work time there. I also think that it's a bit ironic that they're asking for Connex and many other employers to use an old-fashioned timekeeping system in this kind of modern digital economy. What about, I mean, there must be a way to put all this on cell phones. Well, then you get into questions of turning on your cell phone, and, you know, obviously we're thinking about common sense as that's quickly, but, you know, there's a lot of other— Every time I go to put on my computer, I have to push a button on my cell phone before I can get in. It's not—no one's keeping my time, but you can't get on the— that's the method of getting on the computer, and that's true of many other things these days. You need to push a button on your cell phone to check that it's really you. It seems pretty simple. Right. Well, I think there's other wage and hour issues with requiring everyone to use cell phones, which is probably why employers don't do that kind of outside of this case. Because they have to have their own cell phone. Well, and then the employers might need to pay for the expense of the phone, and, you know, there's no, you know, silver bullet solution here, and that's why I think this court and many other courts have recognized it. You know, we—the law is not so rigid to require employers to track every second like robots. There's some flexibility in the law, and— Why does it take so long to boot up some of these computers? It makes me think of a 486. You might be too young to remember what that was, but why does it take almost like 15, 16 minutes to boot this up? Well, I think that that was irregular. I remember that in one of the depositions, one of the plaintiffs testified that there was one computer that was known to be broken, but the employee went to that computer every day and tried to boot it up, even though every— So, you know, the other employees went to computers that worked. So— Are they laptops? Are they— They're desktop computers. Desktop. But, you know, they also upgraded them, and there's testimony about that, that they got faster. You know, there's testimony from Gonzales again, for example, that after he got promoted, you know, I guess that it took less time. But if there are still questions that are outstanding, why was it proper to get rid of this on summary judgment? Well, I think all those differences, all they show— Those factual questions, I mean. Yeah, I think those differences, what they really show is all the variation in how much time it takes. You can't—we can't have, you know, you—it goes to the variability factor and supports summary judgment. But then in terms of when you say that people were paid if they were— But the payment system seems to back out the first seven minutes because it rounds to the nearest quarter, right? So if somebody was—said it took 10 minutes, they wouldn't get paid for the 10 minutes, they'd get paid for three minutes. Is that right? There was a rounding policy such that if someone was supposed to start at 8, if they started at 7.55, they'd round to 8. If they started at 8.05, they'd round to 8. So, you know, our position is it's a neutral policy. The problem on plaintiffs— Maybe neutral, but it can result in somebody spending 10 minutes working and not getting paid for it. Well, the problem with the rounding issue is that's a separate type of claim that the district could— Well, I understand that. But it means that the notion that if they ask to get paid, they're going to get paid, that's not really— I mean, it's not true because, as you say, some of them said they didn't know that they got paid, so that's not proof they got paid. But also, if they asked to get paid, they wouldn't get paid for at least the first seven minutes. Yeah, I think what the district court ruled was that, you know, it wasn't material whether it was set to the shift start time or the actual start time because you had rounding in effect anyways, and there's no evidence that that harmed the employees. So— I'm not understanding why it doesn't harm the employees to— Because— If they have—with some regularity, these things don't work well and it takes 10 or 15 minutes, and you're saying, well, they could put in to get paid. A, we don't know that they actually did get paid, so that's a summary judgment issue. But secondly, they—we know they're not getting paid for at least a good chunk of that time. Well, no, because it goes both ways. If they started working late, then it would be rounded in their favor. Does that make sense? They're not claiming to have started working late. They're claiming to have started working on time but not being able to log in, not being able to show that they're there because the computers, the time it takes to get in the computer. So if they were reporting that they spent time logging in, but if they still arrived late, it might get rounded in their favor. They didn't always arrive early. They weren't arriving late. They were arriving on time and they're not getting paid for it. Well, I think on that particular issue, whether they were paid or not, the burden is on plaintiffs there. On the de minimis issue, we do carry the burden and satisfy it. But on whether people are paid or not, under the Mount Clemens burden-shifting standard, the employees do bear the burden to show they did not get paid for work time. Well, we know that they didn't get paid for some work time. It's just a question of how much work time they didn't get paid for. And that's where it's your burden to determine that it—or to prove that it was de minimis. Well, I think what the district court did, which is correct, is that you can't factor paid time into the de minimis issue. In other words, if you've already been paid, if you had a 20-minute computer delay and that's why you clocked in at 9.20 instead of 9.00, then you reported it and it got fixed and you got that extra 20 minutes back. So why would we— In that case, you'd get 15 minutes, right? Well, if you arrived at 9.00 and you had a 20-minute delay. Except that we have this rounding thing. Right. I just—I think it's really—the way this case was argued and presented at the lower court level, the rounding issue was not pled. And this whole argument about the— It's your contention that if they, in fact, weren't paid for the time period, they would get the money. But, in fact, they'd get some of the money if they asked for it, A. And, B, if they were, in fact, paid for what they asked for, which we don't really know. I mean, you say that you had a system for doing it, but you don't really demonstrate that you do it. Oh, I mean, it is undisputed, again. If you look at plaintiffs' response to the Statement of Material Facts, that the plaintiffs regularly used—when there were delays, they'd use the reporting system. They either used punch claim forms or email or other processes to report the delays and have it corrected. And some people said that they got paid, and some people they didn't know said they didn't know if they got paid. Right. But some people said they went back and checked and confirmed. If you look at Daniel Curley, she always went back. You know, she said she always went back and verified that it was correct. And many other plaintiffs also checked to confirm that they were— the times were adjusted and they were paid for that time. This is another thing I don't understand. If the policy is that you're not paying for the boot-up time, then why were they able to get paid for the boot-up time? If they wrote down that, I want to get paid for the boot-up time, why would they get paid for it if the policy was not to pay for it? The—when it took a substantial— At times there were a lot of complaints from people, exactly, of that. When it took a substantial amount of time is when people got paid. Because I think as the law expects, the employer is not required to track the very small amounts of time.  Somebody put in something saying that I wasn't paid— it took me 10 minutes and I wasn't paid for it. It would be up to the employer whether to pay for that 10 minutes or not. Whether they think that's enough to pay for. Well, again, this was irregular that that happened. That did not happen every day. The testimony shows that delays did not happen every day. So you can imagine, you know, employees all the time engage sometimes in unexpected work. And there should be—there are processes in place to report that. That's very common. Okay. Any additional questions? All right. Thank you. Thank you. In response to a couple of the recent questions, the testimony from the appellants was that they were expected to be ready to take calls at the start of their shift. That means that all of the computer work that was done prior to the beginning of the shift, such as turning on the computer, waiting for it to load up, opening up the computer timekeeping system, clocking in, was not paid. It was in an instance that they could submit the punch adjustment form, was always only—would always only go to their regular start time. It would never cover the time prior to the regular scheduled shift. So the assertion that somehow these folks got paid for the computer boot-up time is inaccurate and not based upon the record. So is there anything in the record to suggest that if someone submitted one of these punch times and said, when I got to work that day and I went on the computer, the computer was slow and clunky and I couldn't get on it and it took me 15 minutes until I found a workable computer, pay me for the 15 minutes. Do we know whether those people would get paid or not? No. The record says that if they did submit a form, it would go to their regular start time. So if an employee began booting up the computer for a 7 o'clock shift, for example, began booting up the computer at 6.45 and clocked in at 6.54 and then something happened to the computer and they couldn't actually— well, I guess that's not the correct example. The example would be if they started their computer at 6.45 and they couldn't log in until 7.04 and they put in for a time adjustment form, it would go to 7. They would never be compensated for that time. And that's in the record from countless appellants. All right. Any additional questions? All right. Thank you for your presentation. Thank you, Your Honor. I appreciate it. This matter will be submitted.
judges: BERZON, MENDOZA, Liburdi